# UNITED STATES FIDELITY AND GUARANTY COMPANY v THOMPSON, Defendant/Third-Party Plaintiff v FIRST COAST INSURANCE, INC.

## Case No. 89-2206-CA

Fourth Judicial Circuit, Duval County

November 15, 1989

### APPEARANCES OF COUNSEL

**Robert M. Dees,** Gabel, Taylor & Dees, for plaintiff, United States Fidelity and Guaranty Company.

**Michael Basford,** for defendant/third party plaintiff, Malcolm A. Thompson.

**Donald L. O'Dell,** for third party defendant, First Coast Insurance, Inc.

### OPINION OF THE COURT

PETER D. WEBSTER, Circuit Judge.

### *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

This declaratory judgment action, involving coverage under a watercraft insurance policy, came on for trial before the Court, sitting without a jury, on October 23, 1989. (By a previous order, the Court had severed defendant's third party claim against First Coast Insurance, Inc., for trial purposes.) Plaintiff/insurer offered into evidence defendant/insured's deposition (taken on May 9, 1989) and a copy of

the watercraft insurance policy (both without objection), and then rested. Defendant offered no evidence or testimony (other than that in his deposition). The Court has read the deposition and the watercraft insurance policy, and now makes the following

## Findings of Fact

1. On April 13, 1988, plaintiff issued to defendant a watercraft insurance policy (No. WIM 105946390). The policy is for a one-year period. The Declarations Page of the policy lists defendant as the named insured, and identifies the "insured watercraft" as a 1988 17-foot fiberglass Pro-Line. The Declarations Page further states that coverage is limited to incidents occurring "while navigating, confined to the waters of: INLAND WATERS OF FLORIDA." In addition, the policy provides that it "applies only to losses occurring . . . [w]hile the insured watercraft is afloat within the navigation limits specified on the Declarations Page." Defendant subsequently received a copy of the policy, including the Declarations Page.

2. On July 30, 1988, defendant, Albert Jorden and Mitchell Farlow went fishing in defendant's 17-foot Pro-Line boat. The boat was trailered to St. Augustine, where it was put in the water. Defendant operated the boat. They fished in the Atlantic Ocean, at various distances from the coast of Florida, up to about thirteen miles. After three to four hours, defendant decided to return to shore.

3. When defendant got to a point approximately three miles from the coastline (and still in the open waters of the Atlantic Ocean), Farlow lost his balance and fell out of the boat. Defendant felt the boat hit Farlow. Eventually, defendant and Jorden got Farlow back into the boat, and returned to shore.

4. Farlow has claimed that he sustained substantial personal injuries as a result of defendant's negligent operation of the boat.

5. Defendant has demanded that plaintiff provide coverage in connection with Farlow's claim against him.

6. Plaintiff claims that no coverage exists under the policy, because the accident did not occur on the "INLAND WATERS OF FLOR-IDA."

7. An actual, good-faith dispute exists between plaintiff and defendant regarding the question of coverage.

## Conclusions of Law

The rules of construction applicable to interpretation of the language of an insurance policy are the same as those applicable to interpreta-

tion of the language of contracts generally, at least insofar as this action is concerned. Generally, language used should be construed according to its plain meaning. *See, e.g., Hess v Liberty Mutual Insurance co.,* 458 So.2d 71 (Fla. 3d DCA 1984); *Southeastern Fire Insurance Co. v Lehrman,* 443 So.2d 408 (Fla. 4th DCA 1984). Moreover, "construction of an insurance policy is a question of law for the court." *Jones v Utica Mutual Insurance Co.,* 463 So.2d 1153, 1157 (Fla. 1985).

In the Court's opinion, there is nothing ambiguous about the critical language of the policy, at least as applied to the facts of this action. Whatever the phrase "INLAND WATERS OF FLORIDA" may be argued to mean in the abstract, the Court can perceive of no basis upon which the phrase might rationally be argued to include the open waters of the Atlantic Ocean some three miles off the coast of Florida.

The parties have not cited any Florida decision which construes the critical language of the policy; nor has the Court, through its own research, found any Florida decision that does so. However, Black's Law Dictionary (revised 4th ed.) defines "inland waters" as follows, at page 926:

Such waters as canals, lakes, rivers, water courses, inlets and bays, exclusive of the open sea, though the water in question may open or empty into the ocean.

The Court's independent research has discovered two decisions construing the meaning of the words "inland waters" when used as navigational limits in marine insurance policies. In the first, *Cogswell v Chubb,* 36 N.Y.S. 1076 (App. Div. 1896), *aff'd without opinion,* 157 N.W. 709, 53 N.E. 1124 (1899), te court said that "inland waters" "are canals, lakes, streams, rivers, water courses, inlets, bays, etc., and arms of the sea between projections of land." 36 N.Y.S. at 1077. It held that an accident occurring on the "open ocean" at least ten miles off the coast did not occur on the "inland waters of the United States," and affirmed a directed verdict in favor of the insurer. In the second case, *R & W Boat Rentals, Inc. v Pennsylvania Insurance Co.,* 257 So.2d 448 (La. App. 1972), the court found that there was nothing vague or ambiguous about the following navigation limits contained in a hull insurance policy:

Warranted by the insured confined to the use and navigation of the inland waters of Louisiana including the Lakes, Bays, and Sounds of this State but excluding any open waters of the Gulf of Mexico. It held that an accident occurring in the Gulf of Mexico "some ten miles off the coast of Louisiana" did not occur within the naviga-

149

tional limits of the policy, and affirmed a summary judgment in favor of the insurer.

In the Court's opinion, the two cases cited above confirm its conclusion that the accident in this action, which occurred in the open waters of the Atlantic Ocean some three miles off the coast of Florida, did not occur within the navigational limits of the policy, clearly set forth on the Declarations Page. Accordingly, there is no coverage under the policy, and plaintiff is entitled to the entry of a judgment in its favor, declaring that to be the case. The Court will enter a separate partial final judgment to that effect.

ENTERED at Jacksonville, Florida, Duval County, Florida, this 15th day of November, 1989.

## PARTIAL FINAL JUDGMENT, AS TO DECLARATORY JUDGMENT ACTION ONLY

Based upon the Court's Findings of Fact and Conclusions of Law entered on this date, it is

ORDERED, ADJUDGED and DECREED that:

1. The watercraft policy (No. WIM 105946390) issued by plaintiff to defendant on April 13, 1988, does not provide coverage of any type regarding an accident which occurred on July 30, 1988, some three miles off the coast of Florida in the open waters of the Atlantic Ocean, because the accident occurred outside the clearly expressed navigation limits of the policy.

2. Defendant's third party claim against third party defendant, First Coast Insurance, Inc., remains pending, and may be set for trial pursuant to an appropriate motion.

DONE, ORDERED, ADJUDGED and DECREED at Jacksonville, Duval County, Florida, this 15th day of November, 1989.